**RORICK et al. v. BOARD OF COM'RS OF EVERGLADES DRAINAGE DIST.**

District Court, N. D. Florida, at Pensacola. July 7, 1928.

No. 160.

1. Courts ⟨⟩303(2)—Suit to enjoin drainage commissioners from issuing bonds held not suit against state, precluding federal court jurisdiction (Rev. Gen. St. Fla. 1920, §§ 1160, 1188; Acts Fla. 1927, c. 12016).

Suit by owners of bonds issued by drainage district in conformity with Rev. Gen. St. Fla. 1920, §§ 1160–1188, to enjoin the board of commissioners from issuing new bonds pursuant to authority of Acts Fla. 1927, c. 12016, *held* not a suit against the state, so as to preclude federal court's jurisdiction.

2. Courts ⟨⟩303(2)—Suit to enjoin drainage commissioners from issuing bonds in alleged violation of Constitution held within federal court jurisdiction (Acts Fla. 1927, c. 12016; Const. U. S. Amend. 11).

Suit to enjoin drainage commissioners from issuing new bonds, under Acts Fla. 1927, c. 12016, being for the purpose of preventing a performance of an alleged unconstitutional act, *held* within jurisdiction of federal court, as not being within prohibition of Const. U. S. Amend. 11, principle that federal court may enjoin officers of state, when commencing proceedings under unconstitutional statute, including confiscatory, and therefore unconstitutional, action begun or threatened, even under a constitutional law.

3. Courts ⟨⟩101—Suit to enjoin drainage commissioners from issuing bonds under state law did not require hearing before three judges (Acts Fla. 1927, c. 12016).

Suit to enjoin drainage commissioners from issuing bonds under Acts Fla. 1927, c. 12016, not affecting entire state, or operating against Governor and other state officers, *held* not within Judicial Code, § 266 (28 USCA § 380), requiring District Judge to have assistance of two other judges on hearing for injunction, though

constitutionality of statute was in certain particular drawn into question.

**4. Courts ⊜351½—Motion to dismiss must be denied, unless it clearly appears from allegations that bill must be dismissed on final hearing (New Equity Rule No. 29 [set out under 28 USCA § 723]).**

Under New Equity Rule No. 29 (set out under 28 USCA § 723), motion to dismiss a bill must be denied, unless it clearly appears from the allegations thereof that it must be dismissed on final hearing.

**5. Courts ⊜343—Proposed purchasers held not necessary parties to suit to enjoin issuance of bonds by drainage district (Rev. Gen. St. Fla. 1920, §§ 1160–1188; Acts Fla. 1927, c. 12016).**

Proposed purchasers of bonds to be issued by drainage district pursuant to Acts Fla. 1927, c. 12016, *held* not essential or necessary parties to suit by owners of outstanding bonds to prevent impairment of contract under such bonds, issued in conformity to Rev. Gen. St. Fla. 1920, §§ 1160–1188.

**6. Trial ⊜165—Motion to dismiss operates as general demurrer.**

Motion to dismiss operates as a general demurrer, which is an admission of facts alleged, but not of stated conclusions of law.

**7. Constitutional law ⊜143—Drains ⊜2(1) —Law authorizing drainage bonds, not of "equal dignity," but superior in obligation and privilege, to prior bonds, held unconstitutional as impairing obligation of contract (Acts Fla. 1927, c. 12016; Rev. Gen. St. Fla. 1920, §§ 1160–1188, § 1178; Const. U. S. art. I, § 10).**

Acts Fla. 1927, c. 12016, authorizing issuance of new bonds by drainage district, superior as regards appropriation of ad valorem taxes for payment, and as to sinking fund, to prior bonds issued in conformity to Rev. Gen. St. Fla. 1920, §§ 1160–1188, section 1178 of which requires new bonds issued to be an obligation of equal dignity with the prior bonds, *held* in violation of Const. U. S. art. 1, § 10, as impairing obligation of contract; the new bonds authorized being of superior and not of equal dignity with the prior bonds, "equal dignity" meaning equality of character, position, rank, status, power, and privilege.

**8. Drains ⊜20—Suit to enjoin issuance of drainage district bonds held not premature, because before issuance thereof.**

Suit by owners of bonds issued by drainage district to enjoin issuance of new bonds *held* not premature, because brought before issuance thereof, in that plaintiffs need not wait until injury is accomplished before bringing suit, but may ask injunctive relief to prevent threatened injury.

**9. Drains ⊜18—Law authorizing issuance of drainage district bonds and their issuance thereunder became part of contract, as though written on face of bonds.**

Law authorizing issuance of drainage district bonds and their issuance in fact thereunder became a part of contract, the obligation imposed by bonds on drainage district just as if written on face of bonds.

**10. Courts ⊜366(1)—Federal courts are bound by state court construction of state statute.**

Federal courts are bound by decision of highest state court in construing state statutes.

**11. Courts ⊜365(3), 372(1)—Federal courts, as to question arising under Constitution and laws of United States or involving general or commercial law, apply law according to federal jurisprudence.**

Where question arises under Constitution and laws of United States, or one is presented involving general or commercial law, federal courts do not follow state decisions, but apply the law according to federal jurisprudence and ascertainment.

In Equity. Suit by H. C. Rorick and others, as Spitzer, Rorick & Co., against the Board of Commissioners of Everglades Drainage District. On motions to dismiss and for interlocutory injunction. Motion to dismiss denied, and interlocutory injunction granted.

Murray, Aldrich & Roberts, of New York City, Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., and Watson, Pasco & Brown, of Pensacola, Fla., for plaintiffs.

Fred H. Davis, Atty. Gen., and Marvin C. McIntosh, of Tallahassee, Fla., for defendants.

CLAYTON, District Judge. There are pending before the court two bills by the plaintiffs, one seeking specific performance to compel the delivery of bonds under alleged contract by and between the plaintiffs and the defendants, the board of commissioners of Everglades drainage district. Hearing on motion to dismiss such bill has not been had.

In the other, case No. 160, now under consideration by the court, plaintiffs, as owners of certain of the bonds already issued and outstanding, pray injunction to prevent the averred impairment of their claimed contract under the bonds issued by the defendant drainage district in conformity with division 1, title 7, Rev. Gen. Stats. of Fla. 1920, as amended from time to time, and now being embraced in sections 1160 to 1188, Rev. Gen. Stats. of Fla., and it is insisted that the bonds were, by virtue of section 1182, issued under an alleged irrepealable contract with every holder of any bond or coupon, for the language of the statute is: "The provisions of this article shall constitute an irrepealable contract between the said board and said Everglades drainage district and the holders of any bonds and the coupons thereof, issued pursuant to the provisions hereof." And the plaintiffs urge that an additional equity of

their bill is found in the provision in section 1178 of the Revised General Statutes, as amended, the essential part of the text being:

"But nothing herein contained shall be deemed a limitation of the right of the Legislature to authorize additional bonds of said board, payable from drainage taxes: * * * Provided any such additional authority shall be accompanied by the levy and imposition of additional taxes or assessments sufficient to meet the payment of the bonds authorized and interest thereon * * * provided for by a sinking fund as herein required, and such additional bonds shall constitute an obligation of equal dignity with the bonds herein authorized and equally with the bonds herein authorized may be entitled to payment from all drainage taxes then or thereafter imposed * * * without preference to any bonds or series of bonds over any other bonds or series of bonds."

Under section 1183 there was a legislative appropriation from all the moneys of the drainage district for the interest upon the bonds and the principal as the same matured, and also a provision for a sinking fund to be created by the payment annually into such sinking fund of an amount at least equal to 2 per cent. of the amount of all bonds outstanding.

By this section it became the duty of the treasurer, out of the proceeds of the taxes imposed and out of any other moneys in his possession belonging to the drainage district, to pay interest on the bonds, and the principal as the same matured, "which moneys so far as necessary are hereby set apart and appropriated for the purpose," and also it was provided that "there is hereby created a sinking fund for the payment of the * * * said bonds," "and the said board shall set apart and pay into such sinking fund annually out of the taxes levied and imposed by this article, and the other revenue and funds of the said district, at least 2 per cent. of the amount of bonds outstanding"—not merely a sinking fund up to 2 per cent., but a sinking fund of at least 2 per cent., for the retirement of all bonds as they mature.

The prayer is to enjoin the carrying out of chapter 12016, Acts of 1927 of Florida, authorizing the board to issue $20,000,000 additional bonds of the Everglades drainage district, and, specifically, to enjoin the board from issuing the new bonds. The plaintiffs' theory is that they are entitled to the equitable relief prayed for, because, as they allege, the issuance of the bonds under the 1927 act would impair the obligations of the plaintiffs' bonds heretofore issued.

It is not deemed necessary to amplify this statement, nor to refer more extensively to the Florida statutes touching the plan for the drainage of the Everglades territory. Happily for the understanding of the case in its historical and legislative aspect, I have had the pleasure of reading the carefully prepared and excellent opinion rendered by Mr. Justice Whitfield, speaking for the Supreme Court of Florida, in Martin v. Dade Muck Land Co., 116 So. 449. This illuminating deliverance, at once a fine judicial utterance and at the same time a valuable historical document, can be referred to in order to supply any omissions in my statement of the legislative enactments and their historical background.

The cause is submitted upon the defendants' motion to dismiss the bill for the want of equity, and upon the motion of the plaintiffs for interlocutory injunction. Now, coming to the questions raised by the pleadings, the verified bill and the motion to dismiss:

[1, 2] 1. The jurisdiction of this court is challenged upon the ground that this is a suit against the state. This cannot be true, for it was aptly said in the Martin Case, supra, that "the Everglades drainage district is a statutory subdivision of the state for special governmental purposes. It embraces a large portion of each of several counties, and the administration of its governmental affairs is wholly distinct from the government of the several counties." And, further, it was there said: "It is competent for the Legislature, as an incident to the formation of a taxing district for governmental purposes, to impose administration duties upon state or other officers to effectuate the objects of the district; there being no express or implied organic provisions to the contrary."

And what is not a suit against the state, just as this case is not such suit, is now well understood and demonstrated in numerous adjudged cases, beginning with Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932; 14 Ann. Cas. 764, where it was held that the officers of the state, clothed with some duty with regard to the enforcement of the laws of the state, and who threaten and are about to commence an action, either civil or criminal, to enforce an unconstitutional state statute, may be enjoined from so doing by a federal court. In the instant case the state officers are named, but they are named as constituting the board of commissioners of the Everglades drainage district, a corporate entity, so that the mention of their incidental official status in connection with their functions

as a part of the drainage corporation must be treated as in the nature of descriptio personæ, for no state officer functions as a member of the board in behalf of the state in its sovereign capacity.

However, if this were a suit against the officers of the state, it is for the purpose of preventing them from enforcing an enactment or the performance of an act alleged to be injurious to the rights of the plaintiffs and repugnant to the Constitution of the United States, and therefore this suit does not fall within the prohibition of the Eleventh Amendment to the Constitution of the United States. Gunter v. A. C. L. R. R. Co., 200 U. S. 273, loc. cit. 283, 284, 26 S. Ct. 252, 50 L. Ed. 477, and cases there referred to. For it is not now open to debate that even officers of a state may be enjoined by a federal court when about to commence proceedings under an unconstitutional statute; and this principle is not confined to proceedings restraining the enforcement of statutes which as enacted are unconstitutional, but includes confiscatory and therefore unconstitutional action begun or threatened even under a constitutional statute. L. & N. R. R. Co. v. Greene, 244 U. S. 522, 37 S. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97. For illustrative cases having bearing on the one here, see Hopkins v. C. A. College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; I. C. Co. v. Regents (D. C.) 199 F. 509; Phœnix Lumber Co. v. Regents (C. C.) 197 F. 425; Camden Interstate Co. v. Catlettsburg (C. C.) 129 F. 421. This opinion need not be padded with other like cases.

[3] 2. It is hardly necessary to say that the state enactment here involved does not require the District Judge to have the assistance of two other judges on the hearing for injunction, for the act does not affect the entire state, nor does it operate against the Governor and other state officers, who exercise the usual and ordinary powers and discharge usual state-wide official duties. Therefore section 266 of the Judicial Code (28 USCA § 380) does not apply, for here, in reality, the defendant is an incorporated minor political subdivision, in the language of the creating act, "to be known and designated as the Everglades drainage district," and therefore three judges are not requisite on this hearing, although the constitutionality of the state statute in a certain particular is drawn into question. To say more on this point would hardly be pardonable, for the question is settled in Ex parte Collins, 48 S. Ct. 585, 72 L. Ed. ——; Smith et al. v. Wilson et al., 273 U. S. 388, 47 S. Ct. 385, 71 L. Ed. 699.

3. Now going on: After the session of the Legislature in 1927, chapter 12016 of the Acts of 1927, the validity of which as against the bondholders, the plaintiffs here, was not drawn into question, but the statute was attacked in the Martin Case as being void for a number of reasons assigned, chiefly upon the ground that the taxpayers' lands were upon an elevated ridge, and not in need of artificial drainage, and could not receive any benefit from the drainage work, and therefore could not be taxed without doing violence to the principle of due process and equal protection of law. I am warranted in saying, after careful consideration of the opinion there, that such was the controlling question —in verity, the vital question—in the case, passed upon by the Florida court of last resort. And this, although the state Supreme Court, inter alia, did determine that the $20,000,000 of bonds proposed to be issued were not obligations of the state, and, inferentially, it may be said that the bonds heretofore issued, those involved here, by the same token are not obligations of the state. For in that case, headnote 9, prepared by the court under the Florida usage, it is said: "The Everglades drainage district is a statutory subdivision" of the state "for special governmental purposes." It embraces a large portion of each of several counties, and the administration of its governmental affairs is "wholly distinct from the government of the several counties."

And on page 468: "While the Everglades drainage district is a state agency, it is utilized, not for general governmental purposes, but for the public improvement of a large area comprising more than 4,000,000 acres of public and private lands in the southern part of the state, for the benefit of the district as an entirety; and the acreage and ad valorem taxes imposed by statute are not general taxes for governmental purposes, but are special assessments for benefits to accrue from the public improvement."

And on page 463: "The bond obligation is that of the district alone, though the drainage operations are by virtue of the statute conducted by state officials, * * * who, under chaper 6456, Acts of 1913, constitute the board of commissioners of the Everglades drainage district."

This establishes the status of the district and its governing board as being in the same category as municipalities and counties, and, as is very clearly pointed out in Rood v.

Claypool Drainage & Levee District (C. C. A.) 120 F. 207, 211, text in part being: "The corporation thus created is, doubtless, one strictly in invitum. It is to be classified, in this respect, with counties, townships, school districts, road districts and other quasi involuntary corporations, as distinguished from municipal corporations or private corporations. It is a subdivision, merely, of the general powers of the State, for the purposes of civil and governmental administration."

[4, 5] 4. Under New Equity Rule No. 29 (set out under 28 USCA § 723), unless it clearly appears from the allegations of the bill that it must be dismissed upon final hearing, the motion to dismiss should be denied. So here the objection urged in the motion to dismiss the bill, because the contractors, Dillon, Read & Co., and Eldredge & Co., for the purchase of the proposed issue of bonds now sought to be enjoined, are not made parties, must be disposed of solely upon the allegations of the bill. Clearly it appears from the bill itself and the law applicable thereto that such proposed purchasers are not essential or necessary parties, and therefore their absence is no reason for dismissal of the bill. Penn. v. W. Va., 262 U. S. 553, loc. cit. 595, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300; Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 S. Ct. 115, 47 L. Ed. 183; City Water Supply Co. v. City of Ottumwa (C. C.) 120 F. 311.

[6] 5. The motion to dismiss operates as a general demurrer, which is an admission of the facts alleged, but not of the stated conclusions of law, and it seems to have been determined in adjudicated cases that it is within the sound discretion of the court, when promotive of justice, to decline to decide a suit on demurrer to the bill, and that the court may put the defendant to his answer, reserving to him the right to take by answer whatever advantage might otherwise have been secured by demurrer; for, if the facts and circumstances disclosed in the bill render it probable that the doing of even justice between the parties is more likely to be secured by leaving the consideration of the merits of the case to be disposed of after answer, then the motion to dismiss should be denied. This rule, of course, is qualified by the exception, where the bill itself plainly discloses no cause for equitable relief, or, to state it in other language, where the motion shows conclusively that on the allegations of the bill it must be dismissed on final hearing. Ralston Steel Car Co. v. National Dump Car Co. (D. C.) 222 F. 590.

[7] 6. As to the objection that this suit is prematurely brought, it must be borne in mind that the bill is to enjoin the execution of a threatened and plainly impending issue of new bonds, superior in so far as the appropriation of the ad valorem tax levied for the purpose of paying off the interest and principal of the new bonds and providing for the sinking fund are concerned, leaving out of consideration the prior obligation imposed by the outstanding contract and bonds of the plaintiffs, and therefore rendering these prior bonds of not "equal dignity" with the proposed bonds in the participation of the funds raised by the new taxation. It must be remembered that section 1178 of the Revised General Statutes, as amended, provides that "such additional bonds [i. e., here the proposed new bonds] shall constitute an obligation of equal dignity with the bonds herein authorized [the plaintiffs' bonds], and equally with the bonds herein authorized may be entitled to payment from all drainage taxes then or thereafter imposed * * * without preference to any bonds or series of bonds over any other bonds or series of bonds."

Under the plan or scheme for the additional or new bonds, the outstanding bonds are, designedly, in fact, discriminated against, and are not to be upon an equality as to payment or the application of drainage taxes imposed by the 1927 act, and in the proposed new issue such bonds are given preference over the outstanding bonds of the plaintiffs. Equal dignity means equality of character, position, rank, status, power, and privilege, and applied here means that the old bonds held by the plaintiffs shall never be rendered by any legislation second to, inferior to, or of privilege less than that with which the legislative enactment clothed the old bonds now held by the plaintiffs. For the language of the old act provided that, if new bonds should be issued, they should be of equal dignity with the first bonds issued; and, conversely, I think it must have been intended, and I so hold, that such new bonds should not be of superior dignity, character or privilege; for, if they be so superior to the old bonds, then that would destroy the equal dignity of all bonds which the old statute was careful should not happen. Therefore the vice of the 1927 act, and of which the plaintiffs complain, is that the new bonds are not of "equal dignity" with the outstanding bonds, but are made of superior dignity; that they are not equal in obligation, but superior in obligation and privilege, to the prior bonds held by the plaintiffs; such preference is in violation

of the plaintiffs' contract and bonds, and is a preference in diminution of the plaintiffs' security, for it denies to plaintiffs participation in such diminution. Plainly it impairs the obligation of the plaintiffs' contract and bonds.

7. From the language of the taxing provisions of the 1927 act, the deduction must be that such act does impose a tax, but leaves the assessment thereof to the drainage board. Compare Road Imp. Dist. No. 1, etc., v. Mo. P. R. R. Co., 274 U. S. 188, 47 S. Ct. 563, 71 L. Ed. 992; Standard Pipe Line Co. v. Miller County H. & B. Dist. (Ark.) 48 S. Ct. 441, 72 L. Ed. ——, decided May 14, 1928. What constitutes a levy of taxes, and the difference between a levy and an assessment, is well shown in 3 Cooley, Taxation (4th Ed.), beginning on page 2043. Numerous cases are cited in the footnotes on that page and subsequent pages to sustain the text.

[8] 8. It is a futile contention to say that the plaintiffs' bill has been prematurely brought, and that plaintiffs must wait until the drainage district board has refused to keep up the sinking fund, or until such fund has been actually impaired, or until the drainage district has actually defaulted in the payment of the plaintiffs' bonds and coupons. The correct principle, and applicable here, is that the plaintiffs need not wait until the injury is accomplished before bringing suit, but may ask, as being timely, injunctive relief to prevent the threatened injury. In Board of L. et al. v. McComb, 92 U. S. 531, 23 L. Ed. 623, no default in payment had occurred, and the ruling of the court was grounded upon the proposition that the proposed issuance of the bonds would be in violation of the contract made by the act authorizing the prior bonds. It is manifest that the Florida law prior to the 1927 act, by various carefully worded provisions trying to protect the payment of the bonds issued thereunder, clearly and even ex industria pledged all tax funds raised by the drainage board as payment for all bonds and interest thereon, without discrimination in favor of or against any bonds of any issue.

In Hubert v. New Orleans, 215 U. S. 170, on page 175, 30 S. Ct. 40, 42 (54 L. Ed. 144), special reference is made to this language: "In order to review in this court the judgment of a state court because of the provision of the federal Constitution against state legislation impairing the obligation of a contract, the impairment must be by some subsequent legislation of the state which has been upheld or given effect in the judgment of the state court sought to be reviewed. Bacon v. Texas, 163 U. S. 207 [16 S. Ct. 1023, 41 L. Ed. 132] * * *. A number of decisions in this court have settled the law to be that where a municipal corporation is authorized to contract, and to exercise the power of local taxation to meet its contractual engagements, this power must continue until the contracts are satisfied, and that it is an impairment of an obligation of the contract to destroy or lessen the means by which it can be enforced."

And near the bottom of page 176 (30 S. Ct. 43), this language from Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395, is quoted: "The prohibition of the Constitution against the passage of laws impairing the obligation of contracts applies to the contracts of the state, and to those of its agents acting under its authority. * * * And that obligation is impaired, in the sense of the Constitution, when the means by which a contract at the time of its execution could be enforced, that is, by which the parties could be obliged to perform it, are rendered less efficacious by legislation operating directly upon those means."

This doctrine is apposite here, because the act of 1927 provides for an ad valorem tax in which the plaintiffs' bonds and coupons do not share, and under the scheme for the enforcement of the payment of such tax so levied the visible and available means by which the plaintiffs' contract at the time of its execution could be enforced may be diminished, and this diminution was clearly within the legislative contemplation, for the act provides for the sale of the land if the landowner shall make default in the payment of the ad valorem tax.

[9] Moreover, it is not open to controversy that the law authorizing the issuance of the plaintiffs' bonds and their issuance in fact thereunder became and is a part of the contract, the obligation imposed by the bonds upon the drainage district, just as if written on the face of the bonds. Moore v. Otis (C. C. A.) 275 F. 747. And, this being true, it constitutes an irrepealable contract under general law, in addition to the legislative declaration set out above; and if the act of 1927 providing for the new bonds militates against the obligation owned by the plaintiff, it is in excess of authority and repugnant to the organic law forbidding the impairment of contracts.

[10, 11] 9. It is said that the Supreme Court of Florida has declared the act of 1927 for the issuance of the new bonds constitutional. It is true that the court held that as a tax

measure it did not collide with the inhibitions of either the federal or state Constitution. Here the question is: Does the Florida enactment impinge the constitutional prohibition against the impairment of a contract? And, without elaborating the distinction between the case as passed upon by the state Supreme Court and the one here under consideration, it must be said that the federal courts are bound by decisions of the highest state court in construing a state statute; but, with due deference, it is also the law that when the question arises under the Constitution and laws of the United States, or one is presented involving general or commercial law, federal courts do not follow state decisions, but apply the law according to federal jurisprudence and ascertainment.

10. It is conceded, of course, that the Legislature and drainage board are to be commended for the manifest intention to reclaim or drain the lands of the Everglades district; however, in such undertaking due regard must be had for the contracted rights or vested interests in all taxes imposed, even those imposed by the act of 1927, for the outstanding bond obligations; for, under the law existing at the time of their issuance, which is, as has been said, a part of the contract, they are to be treated as entitled to equal consideration with any of the bonds, and may not be discriminated against under the new scheme for an ad valorem tax; for, as it has been stated above, the law authorizing the plaintiffs' bonds is as much a part of the contract obligation, inseparable from the bonds, as if such law had been set forth ipsissimis verbis on the face of the bonds.

It is shown without controversy that this case presents the requisite diversity of citizenship, that the sum or value involved is $3,000 and more, and that the bonds now actually held by the plaintiffs exceed the minimum amount prescribed by the statute, and all the outstanding bonds total more than $10,000,000. I think that the provisions of the state statutes, evidently, were to protect the old bonds against discrimination by new legislation, and in my opinion good reason ineluctably demonstrates that the scheme for the application of the tax funds to arise under the 1927 act, impairs the obligation of the plaintiffs' contract and bonds, in disregard of section 10, art. 1, of the Constitution of the United States: "No state shall * * * pass any * * * law impairing the obligation of contracts."

And for the reason that the 1927 act does impair the obligation of the plaintiffs' contract, and the drainage board threatens to carry out such impairment, the motion to dismiss the bill is denied, and decretal order for interlocutory injunction is entered.