## PHŒNIX LUMBER CO. v. REGENTS OF THE UNIVERSITY OF IDAHO.

(Circuit Court, D. Idaho, N. D.   September 8, 1908.)

1. PLEADING (§ 48*)—COMPLAINT—SUFFICIENCY.

Under Rev. St. Idaho 1887, § 4168, subd. 2, providing that the complaint, among other things, must contain a statement of the facts constituting the cause of action in ordinary and concise language, a complaint merely alleging that on or about March 30, 1907, defendant was indebted to plaintiff's assignor in the sum of $3,000, which sum was then and there due and payable from defendant to plaintiff's assignor, was insufficient for failure to state the facts out of which such indebtedness arose.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 105, 106; Dec. Dig. § 48.*]

2. COLLEGES AND UNIVERSITIES (§ 10*)—STATES (§ 191*)—PUBLIC CORPORATION—STATE BOARD OF REGENTS—ACTION AGAINST STATE.

Const. Idaho art. 9, § 10, provided that the location of the University of Idaho as established by existing laws was thereby confirmed, and that all the rights, immunities, franchises, and endowments previously granted thereto by the territory were perpetuated unto the University; that the Regents should have general supervision and control of the funds of the University under such regulations as might be prescribed by law. By Territorial Act Jan. 30, 1889 (Laws 1888–89, p. 17), the University was established and its government vested in a Board of Regents, to be appointed by the Governor; the board to constitute a body corporate as "The Regents of the University of Idaho," and should possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law, and should have the books, records, buildings, and other property of the University. The board elects its own president, secretary, and treasurer, whose duties are similar to corresponding officers in private corporations. *Held*, that the Regents of the University had implied power to sue and be sued, and that an action brought against them was not objectionable as in effect an action against the state, without the state's consent to be sued.

[Ed. Note.—For other cases, see Colleges and Universities, Cent. Dig. § 9; Dec. Dig. § 10;* States, Cent. Dig. §§ 179–184; Dec. Dig. § 191.*

What are suits against states within constitutional amendment eleven, see note to Murray v. Wilson Distilling Co., 92 C. C. A. 25.]

---

At Law. Action by the Phœnix Lumber Company against the Regents of the University of Idaho. On demurrer to the complaint. Sustained in part.

Post, Avery & Higgins, for plaintiff.

Forney & Moore, for defendant.

DIETRICH, District Judge. [1] Upon the ground that the complaint does not state facts sufficient to constitute a cause of action, the demurrer must be sustained. The plaintiff sues as the assignee of James A. Colson & Son, and, apart from the formal allegations of corporate existence and of jurisdictional facts, the charge is:

"That on or about March 30, 1907, the defendant was indebted to James A. Colson & Son * * * in the sum of three thousand dollars ($3,000.00), which sum was then and there due and payable from said defendant to said James A. Colson & Son."

Assignment, demand for payment, and refusal to pay are averred, but neither directly nor indirectly does the plaintiff plead the facts or circumstances upon which the claim of indebtedness is based. By subdivision 2 of section 4168 of the Revised Statutes of Idaho it is provided that a complaint, among other things, must contain "a statement of the *facts* constituting the cause of action in ordinary and concise language." While brevity in pleadings is to be commended, the Code contemplates that the ultimate facts, as distinguished from mere conclusions, shall be detailed with sufficient particularity to apprise the defendant of the basis of the plaintiff's claim. For the plaintiff to allege that the defendant is indebted to him, without setting forth when, where, or how the indebtedness arose, is not a statement of "the *facts* constituting" a cause of action, and, in effect, is little more than a demand for judgment. Swanholm v. Reeser, 3 Idaho (Hasb.) 476, 31 Pac. 804. The reason of the rule applies with great force in a case where, as here, it is sought to charge indebtedness upon a party whose functions are special, and whose legitimate activities are measurably circumscribed. It is therefore thought that the plaintiff, in order to state a cause of action, must set forth the facts out of which the assigned indebtedness arose with sufficient detail and completeness to disclose an obligation within the scope of defendant's authority, and a fulfillment by the plaintiff and its assignor of the conditions precedent to its right successfully to maintain the suit.

[2] It is further contended by the defendant that this is in effect, a suit against the state of Idaho, and therefore it cannot be maintained. By an act of the Legislature of the Territory of Idaho, approved January 30, 1889 (Laws 1888–89, p. 17), the University of Idaho was established at the town of Moscow, and its government was vested in a Board of Regents, to be appointed by the Governor. "The Board of Regents," it was provided, "shall constitute a body corporate by the name of 'The Regents of the University of Idaho,' and shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law, and shall have

the custody of the books, records, buildings and other property of said University." The board elects its own president, secretary, and treasurer, whose duties are similar to those of corresponding officers in private corporations. By-laws may be adopted by the board prescribing specific rules for the conduct of its officers and fixing the amount of the treasurer's bond. It is also vested with power to enact laws for the government of the University, to make expenditures for the erection of suitable buildings, and for the purchase of apparatus and library, and to employ and discharge professors and instructors. "The treasurer of said board," the act provides, "shall, out of any moneys in his hands belonging to said board, pay all orders drawn upon him by the president and secretary thereof, when accompanied by vouchers fully explaining the character of the expenditure." At the close of each fiscal year the Regents, through their president, are required to report in detail to the Governor the progress, conditions, and wants of the University, the amount of receipts and disbursements, and such other information as may be deemed to be important. The object of the University is "to provide the means of acquiring a thorough knowledge of the various branches of learning connected with scientific, industrial and professional pursuits."

By section 10 of article 9 of the Constitution of Idaho, it is provided that:

"The location of the University of Idaho as established by existing laws is hereby confirmed. All the rights, immunities, franchises and endowments heretofore granted thereto by the Territory of Idaho are hereby perpetuated unto the said University. The Regents shall have the general supervision of the University and the control and direction of all the funds of and appropriations to the University, under such regulations as may be prescribed by law. * * *"

Clearly the University is a public institution, and, in its government, the corporation thus created performs certain administrative functions of the state. It is, of course, not pretended that an individual can maintain an action against the state unless it consents to submit itself to the jurisdiction of the courts, but this exemption the state may waive; and assuming, therefore, that the defendant was brought into existence and is maintained only for the purpose of performing certain administrative functions which might have been performed directly by the state, through its executive officers, the question is whether in creating the defendant corporation it was contemplated that, among other things, it should have the power to sue and be sued. Subject to rules of conduct generally applicable to trustees, and limited only by the purpose of their incorporation, the Regents were clothed with plenary power, and their acts were not dependent for their validity upon the approval of any other officer or board. They were authorized both to enter into and to fulfill their contracts, and to pay, as well as to incur, indebtedness. True it is that neither the act creating the defendant nor any subsequent statute expressly confers the power to sue or be sued, but there was no attempt on the part of the Legislature expressly to define all of

the powers delegated to the defendant. It is provided that the Board of Regents "shall constitute a body corporate, * * * and shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law." Its organization is closely assimilated to that of a private corporation, one of the ordinary incidents of which is the power to sue and be sued. When for its own convenience and to effect some specific object a state creates an agency under a corporate name, and confers upon it corporate powers, it cannot be doubted that in relation to such object it may divest itself of its sovereign character, and may subject such corporation to the liability to be sued; and this I think was the intention of the Legislature in creating the defendant. The modern tendency is to place municipal corporations and other boards and bodies performing public administrative functions within the jurisdiction of the courts, and such, generally speaking, has been and is the policy of the state of Idaho. Its counties may be sued; its towns and villages; its school districts. It has created and maintains other public institutions not essentially different in character from the University. There are, for instance, the two State Normal Schools, and the State Academy, all strictly educational, and all public in character. There is also the State Industrial School, both reformative and educational, but also of a public character. The government of each of these institutions is vested in a board appointed by the Governor of the state, not incorporated, but expressly declared to have the power to sue and be sued. Upon the other hand, while the Board of Regents has not been expressly invested with the power to sue and be sued, it is declared to be a body corporate, and by general language is clothed with all power necessary and convenient to accomplish the object of its creation. No reason is, or can be, given why the other boards should be subjected to the liability of suit, and the Board of Regents be exempted therefrom. It is clearly the policy of the state, in conferring the power to contract and incur liability, to open the doors of the courts for the enforcement of such contracts both by and against such boards. Indeed, it may well be doubted whether these boards would be able to contract with the public upon favorable terms if it were understood that they are not suable, and that, in case of disagreements, parties who have dealt with the board are remediless in the courts.

The objection is urged that, if a judgment is rendered against the defendant, it follows that the court may direct the seizure and sale of its property—that is, of the University—in order to satisfy the judgment, and that no such result could have been contemplated by the Legislature. The objection goes, not to the power of the Legislature to subject the defendant to the jurisdiction of the courts, but, in the absence of an express provision to that effect, the consideration is supposed to militate against the reasonbleness of the view that the power of the defendant to be sued is implied. It is not at this time necessary to decide in what manner a judgment could or should be enforced against the defendant, or whether the court could or would, for the purpose of executing its judgment, cause the prop-

erty of the defendant to be seized and sold. Assuming that such contingency is within the range of legal possibilities, it is not obvious why the Legislature should be shocked any more by the contemplation of such seizure and sale than by the seizure and sale of the property under the control of the board of the State Normal at the city of Lewiston, or of the Industrial School at St. Anthony. The Legislature has clearly and unequivocally provided that these boards may be sued, and hence that judgments may be entered against them, and it is not apparent why a judgment against the Board of Regents could not and should not be enforced in the same way and to the same extent as judgments against these boards. While the question was not raised, the power of the board to sue and be sued was recognized in American Bonding Co. v. Regents of the University, 11 Idaho, 163, 81 Pac. 604. See, also, State University v. Bruner, 66 Ill. App. 665; Sinking Fund Com. v. Northern Bank, 1 Metc. (Ky.) 174; Bank of United States v Planters, 9 Wheat. 904, 6 L. Ed. 244.

Upon all grounds, therefore, except the insufficiency of the complaint, the demurrer will be overruled, and upon that ground it is sustained with leave to the plaintiff to serve and file an amended complaint within 20 days from the date hereof.