# TIDAL OIL COMPANY ET AL. *v.* FLANAGAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 179. Motion to dismiss or affirm submitted November 19, 1923.—Decided January 7, 1924.

1. An Act of February 17, 1922, amending Jud. Code, § 237, provides: "In any suit involving the validity of a contract wherein it is claimed that a change in the rule of law or construction of statutes by the highest court of a State applicable to such contract would be repugnant to the Constitution of the United States, the Supreme Court shall, upon writ of error, reexamine, reverse, or affirm the final judgment of the highest court of a State in which a decision in the suit could be had, if said claim is made in said court at any time before said final judgment is entered and if the decision is against the claim so made."

   *Construed,* as not seeking to add to the general appellate jurisdiction of this Court, existing under prior legislation, but to permit review by writ of error of the class of cases therein mentioned, in which the defeated party claims that his constitutional rights have been violated by the judgment of the state court itself; and to permit the objection to be raised, in the state court, after the handing down of its opinion, and to be raised here even though petition for rehearing be denied by the state court without opinion. Pp. 450, 454.

2. The mere fact that a state Supreme Court decides against a party's claim of property or contract right by reversing its earlier decision of the law applicable to such cases, does not deprive him of his property without due process of law, contrary to the Fourteenth Amendment, nor amount to the passing of "any law" impairing the obligation of contracts, contrary to the contract clause of the Constitution. Pp. 450, 451.

3. This has been so often adjudged by the Court, that contentions to the contrary are without substance and a writ of error dependent on them must be dismissed for lack of jurisdiction. Pp. 450, 455.

4. Cases *distinguished* in which it has been held, that federal courts, exercising jurisdiction based on diverse citizenship, to avoid injustice, but without invoking the contract clause, may decide and enforce the state law as laid down by decisions of the state court governing when a contract was made, rather than by its later decisions; and those involving alleged impairment of contract by a

subsequent statute, in which the construction of the statute by the state court is accepted, but the existence, validity and scope of the contract, (and, therein, the meaning of the state statutes forming part of it,) and the effect upon the contract of the subsequent statute, are determined by this Court for itself. P. 451.

Writ of error to review 87 Okla. 231, dismissed.

ERROR to a judgment of the Supreme Court of Oklahoma, which affirmed with modification a judgment in favor of the present defendant in error; in his action involving the rights of the parties under conflicting deeds and agreements affecting an Indian allotment.

*Mr. Edward H. Chandler* and *Mr. William O. Beall,* for defendant in error, in support of the motion. *Mr. Summers Hardy* and *Mr. Thomas J. Hanlon* were also on the brief.

*Mr. Preston C. West, Mr. Alexander A. Davidson, Mr. Wallace C. Franklin* and *Mr. Arthur J. Biddison,* for plaintiffs in error, in opposition to the motion. *Mr. Y. P. Broome* was also on the brief.

Insofar as Tidal Oil Company is concerned, it is conceded that the writ of error may only be sustained under the Act of February 17, 1922, 42 Stat. 366, amending § 237, Jud. Code.

The record presents this situation: The parties on both sides claim through Marshall, a minor, to whom the land was allotted. On June 30, 1913, the allottee, by his guardian, entered into an agreement with one Arnold, in settlement and compromise of certain controversies existing between them relative to the ownership of the allotment. On petition filed by the guardian in the probate court of his appointment, that court approved and confirmed the agreement. The Oil Company claims as assignee of the lease, recognized and adopted by the guardian on behalf of the allottee with the approval of the proper probate court.

Under the statutes of Oklahoma, as construed by its highest court at the time the lease was so adopted and approved, the only requisite to the validity of this lease was, that it be sanctioned or approved by the probate court having jurisdiction of the guardianship. *Duff* v. *Keaton,* 33 Okla. 92; *Allen* v. *Midway Oil Co.,* 33 Okla. 91; *Cowles* v. *Lee,* 35 Okla. 159. See also *Papoose Oil Co.* v. *Swindler,* March 27, 1923, pending on rehearing and unreported.

In its decision in the present case, the state Supreme Court recognizes that guardians may lease lands of their wards for oil and gas mining purposes, provided they are made " in the manner prescribed by law and under the rules of this court which have been held to have the force and effect of a statute where the same are not in conflict with a statute," and cites its decisions in *Winona Oil Co.* v. *Barnes,* 83 Okla. 248, and *Carlile* v. *National Oil Co.,* 83 Okla. 217. In these decisions, rendered in 1921, the court had held, for the first time, and in conflict with its prior decisions, that in order for the guardian of a minor to make a valid lease on the ward's land, such leases must be put up and sold at public auction to the highest bidder.

The record shows that Marshall was a freedman allottee of the Creek Nation, and all restrictions on his allotment were removed by Act of May 27, 1908, § 1, 35 Stat. 312. The same act provides, in § 6, that such minor allottees are subject to the jurisdiction of the probate courts of Oklahoma.

So that, in determining whether or not the lease, as adopted by the guardian with approval of the probate court, was valid or invalid, the only question involved was the proper construction of the state statutes regulating the procedure in such cases in the probate courts. Necessarily, therefore, by basing its decision on the *Winona* and *Carlile Cases,* the court below followed the rule announced in those cases, rather than the rule which applied under

its decisions as they stood at the time the transaction was had. While the reasoning of the court on this point is not very clear, its effect as changing the rule of construction of the applicable state statutes cannot be disputed. This Court is not concerned with the reasoning, but with its effect. *McCullough* v. *Virginia,* 172 U. S. 102. This Court has repeatedly held that the obligation of contracts may be impaired by a change of judicial decision. *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Douglass* v. *Pike County,* 101 U. S. 677; *Anderson* v. *Santa Anna,* 116 U. S. 356; *German Savings Bank* v. *Franklin County,* 128 U. S. 526; *Los Angeles* v. *Los Angeles Water Co.,* 177 U. S. 558.

The Court has held, however, under the codes prior to the amendment of February 17, 1922, that it had no appellate jurisdiction to review this character of question on writ of error to a state court. This, as we understand it, is the rule announced in the cases cited by defendant in error, such as: *Central Land Co.* v. *Laidley,* 159 U. S. 103; *Bacon* v. *Texas,* 163 U. S. 207; and *Rooker* v. *Fidelity Trust Co.,* 261 U. S. 114. Evidently the amendment of February 17, 1922, was for the express purpose of extending the appellate jurisdiction of this Court to cover cases involving the impairment of contract obligations by change of judicial decision in the construction of applicable statutes. This is the plain language of the act.

It is contended, in the motion to dismiss, that plaintiff in error has no right to a review under this act because the federal question, if any exists, was presented to the state court for the first time in the application for rehearing, and the application was denied without opinion. It will be observed the act specifies that the claim of a change in the rule of construction may be made at any time before final judgment is *entered.* The claim does not have to be made before judgment is *rendered.* Because of the very purpose of the act, Congress must have had in mind the distinction between the rendition of a

judgment and its entry. In the present case, as in all others that may come within the amendment, the federal question first arose when the state court rendered its decision holding void the contract which, under prior construction, was valid. With just such a situation in view, Congress evidently intended that the claim might be made at any time before the cause had been finally disposed of and closed in the state court.

There is no statute of the State specifically providing for the entry or recording of judgments of the Supreme Court. Under its rules, a case is not finally closed until the petition for rehearing has been disposed of, or the time has expired within which petition may be filed and none has been filed. The record shows that the petition for rehearing was filed within an extension of time granted by the Supreme Court, and that it was set down for oral argument, argued and submitted.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

J. P. Flanagan sued the Tidal Oil Company and Eleanor Arnold in the District Court of Creek County, Oklahoma, to quiet his title to two tracts of land therein of eighty acres each. His title was based on a quitclaim deed of Robert Marshall, an allottee and citizen of the Creek Nation, executed in October, 1916, after Marshall had attained his majority and had been discharged from guardianship. The defendants derived their title from the same allottee, but the deed under which they claimed was made by Marshall when he was 14 years old and married, and after he had been granted majority rights by the District Court. He subsequently sought to have this deed cancelled in a suit in the same court brought by his guardian, but judgment went against him. Defendants insisted that this judgment was conclusive in the case at bar against the plaintiff as subsequent

grantee of Marshall. After this judgment, and by way of compromise, gas and oil leases and contracts to convey were made in favor of defendants or their grantors by the guardian and approved by the County Court, and these were also relied on to defeat plaintiff's title. The District Court gave judgment in favor of Flanagan for the lands and included a heavy recovery for mesne profits. The Supreme Court of Oklahoma affirmed this but somewhat reduced the amount of recovery. It held that the deed and agreements and leases under which defendants claimed were void because Marshall was a minor when they were made; that the judgment of the District Court against him and his guardian in their suit to cancel the first deed was void because it appeared on the face of the record that Marshall was then a minor and that these were allotted lands, of the title to which he could not be divested except in a Probate Court under procedure required by a state statute and not complied with. The errors here assigned are, first, that the judgment deprived the defendants of their property without due process of law contrary to the Fourteenth Amendment; and, second, that the Supreme Court of the State, in holding the judgment and confirmations of the District and County Courts to be void, reversed its previous decisions and changed a rule of property of the State upon the faith of which the deed, leases and other contracts set up by defendants were made, and thus impaired their obligation in violation of § 10, Article I, of the Federal Constitution.

A motion to dismiss is made by the defendant in error, because the federal questions were too late, in that they were raised for the first time in petitions for rehearing which the court denied without opinion. The record does not sustain this ground in respect to the objection based on the Fourteenth Amendment, because that appears in the assignment of errors filed on the appeal from

74308°—24——29

the District Court to the State Supreme Court. The assignment, however, has no substance in it. The parties to this action have been fully heard in the state court in the regular course of judicial proceedings and in such a case the mere fact that the state court reversed a former decision to the prejudice of one party does not take away his property without due process of law. This was expressly held in the case of *Central Land Co.* v. *Laidley,* 159 U. S. 103, 112. See also *Morley* v. *Lake Shore Ry. Co.,* 146 U. S. 162, 171; *Patterson* v. *Colorado,* 205 U. S. 454, 461; *Delmar Jockey Club* v. *Missouri,* 210 U. S. 324, 335; *Bonner* v. *Gorman,* 213 U. S. 86, 91; *Milwaukee Electric Ry. Co.* v. *Milwaukee,* 252 U. S. 100, 106.

A ground for dismissal urged is that the validity of no federal or state statute or authority exercised under the United States or the State, was drawn in question in the state court on the ground of a repugnance to the Federal Constitution, and hence there is no right to a writ of error under § 237 of the Judicial Code, as amended by the Act of September 6, 1916, c. 448, 39 Stat. 726, and that the only remedy available to the plaintiffs in error was an application to this Court for certiorari because they had been denied a right, title, privilege, or immunity, granted by the Federal Constitution. In answer, the plaintiffs in error invite attention to an Act of Congress of February 17, 1922, c. 54, 42 Stat. 366, again amending § 237, reading as follows:

" In any suit involving the validity of a contract wherein it is claimed that a change in the rule of law or construction of statutes by the highest court of a State applicable to such contract would be repugnant to the Constitution of the United States, the Supreme Court shall, upon writ of error, reexamine, reverse, or affirm the final judgment of the highest court of a State in which a decision in the suit could be had, if said claim is made in said

court at any time before said final judgment is entered and if the decision is against the claim so made."

The case before us seems clearly within the foregoing. It does involve the validity of a contract, it is claimed that a change in the rule of law by the highest court of the State applicable to the contract is repugnant to the Federal Constitution, and the decision of that court was against the claim.

It has been settled by a long line of decisions,[1] that the provision of § 10, Article I, of the Federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts. The language—" No State shall . . . . *pass any* . . . *law* impairing the obligation of contracts "—plainly requires such a conclusion. However, the fact that it has been necessary for this Court to decide the question so many times is evidence of persistent error in regard to it. Among the cases relied on to sustain the error, are *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Butz* v. *Muscatine,* 8 Wall. 575; *Douglass* v. *Pike County,* 101 U. S. 677; *Anderson* v. *Santa Anna,* 116 U. S. 356; *German Savings Bank* v. *Franklin County,* 128 U. S. 526; *Rowan* v. *Runnels,* 5 How. 134, 139, and *Los Angeles* v.

---

[1] *Commercial Bank* v. *Buckingham's Executors,* 5 How. 317, 343; *Railroad Co.* v. *Rock,* 4 Wall. 177, 181; *Railroad Co.* v. *McClure,* 10 Wall. 511; *Knox* v. *Exchange Bank,* 12 Wall. 379, 383; *Lehigh Water Co.* v. *Easton,* 121 U. S. 388; *New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18, 30; *Brown* v. *Smart,* 145 U. S. 454, 458; *Central Land Co.* v. *Laidley,* 159 U. S. 103, 111, 112; *Bacon* v. *Texas,* 163 U. S. 207, 221, 223; *Hanford* v. *Davies,* 163 U. S. 273, 278; *Turner* v. *Wilkes County Commrs.,* 173 U. S. 461, 63; *National Association* v. *Brahan,* 193 U. S. 635, 647; *Hubert* v. *New Orleans,* 215 U. S. 170, 175; *Fisher* v. *New Orleans,* 218 U. S. 438; *Cross Lake Shooting and Fishing Club* v. *Louisiana,* 224 U. S. 632, 638; *Ross* v. *Oregon,* 227 U. S. 150, 161; *Kryger* v. *Wilson,* 242 U. S. 171, 177; *Rooker* v. *Fidelity Trust Co.,* 261 U. S. 114, 118; *Columbia Ry. Co.* v. *South Carolina,* 261 U. S. 236, 244.

*Los Angeles City Water Co.*, 177 U. S. 558. These cases were not writs of error to the Supreme Court of a State. They were appeals or writs of error to federal courts where recovery was sought upon municipal or county bonds or some other form of contracts, the validity of which had been sustained by decisions of the Supreme Court of a State prior to their execution, and had been denied by the same court after their issue or making. In such cases the federal courts exercising jurisdiction between citizens of different States held themselves free to decide what the state law was, and to enforce it as laid down by the State Supreme Court before the contracts were made rather than in later decisions. They did not base this conclusion on Article I, § 10, of the Federal Constitution, but on the state law as they determined it, which, in diverse citizenship cases, under the third Article of the Federal Constitution they were empowered to do. *Burgess* v. *Seligman*, 107 U. S. 20. In such cases, as a general rule, they, in the interest of comity and uniformity, followed the decisions of state courts as to the state law, but where gross injustice would be otherwise done, they followed the earlier rather than the later decisions as to what it was. Had such cases been decided by the state courts, however, and had it been attempted to bring them here by writ of error to the State Supreme Court, they would have presented no federal question, and this Court must have dismissed the writs for lack both of power and jurisdiction. This is well illustrated by the cases of *Gelpcke* v. *Dubuque*, 1 Wall. 175, and *Railroad Co.* v. *McClure*, 10 Wall. 511. In the former, bonds sued on in the Circuit Court of the United States, were collected under judgment of this Court. In the latter, like bonds sued on in a state court were held invalid, and a writ of error to the State Supreme Court was dismissed.

Other cases cited are *Louisiana* v. *Pilsbury*, 105 U. S. 278, and *Muhlker* v. *New York & Harlem R. R. Co.*, 197

U. S. 544, but in each of them a statute had been passed subsequently to the contract involved and was held to impair it.   In such a case this Court accepts the meaning put upon the impairing statute by the state court as authoritative, but it is the statute as enforced by the State through its courts which impairs the contract, not the judgment of the court.

There is another class of cases relied on to maintain this writ of error.   They are those in which this Court has held that in determining whether a state law has impaired a contract, it must decide for itself whether there was a contract and whether the law as enforced by the state court impairs it.   It often happens that a law of the State constitutes part of the contract and, to make the constitutional inhibition effective, this Court must exercise an independent judgment in deciding as to the validity and construction of the law and the existence and terms of the contract.   *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436, 443; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 145; *Wright* v. *Nagle,* 101 U. S. 791, 793; and *McGahey* v. *Virginia,* 135 U. S. 662, 667.

Then there are cases like *McCullough* v. *Virginia,* 172 U. S. 102; *Houston & Texas Central R. R. Co.* v. *Texas,* 177 U. S. 66, 76, 77; *Hubert* v. *New Orleans,* 215 U. S. 170, 175; *Carondelet Canal Co.* v. *Louisiana,* 233 U. S. 362, 376, and *Louisiana Ry. & Nav. Co.* v. *New Orleans,* 235 U. S. 164, 171.   In each of them the judgment of the State Supreme Court seemed from its opinion merely to be a reversal of a previous construction by it of a statute upon the faith of which the contract had been made.   In fact, however, the judgment merely gave effect to an existing subsequent statute impairing the obligation of the contract which was thus a law passed in violation of Article I, § 10.

The difference between all these classes of cases and the present one wherein it is claimed that a state court judg-

ment alone, and without any law, impairs the obligation of a contract, has been carefully pointed out in *Central Land Co.* v. *Laidley*, 159 U. S. 103, 111, 112, in *Bacon* v. *Texas*, 163 U. S. 207, 221, 223, and in *Ross* v. *Oregon*, 227 U. S. 150, 161. Certain unguarded language in *Gelpcke* v. *Dubuque*, 1 Wall. 175, 206; *Butz* v. *Muscatine*, 8 Wall. 575, 583, and in *Douglass* v. *Pike County*, 101 U. S. 677, 686–687, and in some other cases, has caused confusion, although those cases did not really involve the contract impairment clause of the Constitution.

We come then to the last point made on behalf of plaintiffs in error. It may be best stated in the words of their brief. After referring to *Gelpcke* v. *Dubuque, supra, Douglass* v. *Pike County, supra, Anderson* v. *Santa Anna, supra,* and *German Savings Bank* v. *Franklin County, supra,* counsel say:

" The court has held, however, under the codes prior to the amendment of February 17, 1922, that it had no appellate jurisdiction to review this character of question on writ of error to a state court. This, as we understand it, is the rule announced in the cases cited by defendant in error, such as: *Central Land Co.* v. *Laidley*, 159 U. S. 103, *Bacon* v. *Texas*, 163 U. S. 207, and *Rooker* v. *Fidelity Trust Co.*, 261 U. S. 114.

" Evidently the amendment of February 17, 1922, to section 237 of the Judicial Code, was for the express purpose of extending the appellate jurisdiction of this court to cover cases involving the impairment of contract obligations by change of judicial decision in the construction of applicable statutes. This is the plain language of the act."

The intention of Congress was not, we think, to add to the general appellate jurisdiction of this Court existing under prior legislation, but rather to permit a review on writ of error in a particular class of cases in which the defeated party claims that his federal constitutional rights

have been violated by the judgment of the state court it-self, and further to permit the raising of the objection after the handing down of the opinion. This Court has always held it a prerequisite to the consideration here of a federal question in a case coming from a state court that the question should have been raised in that court before decision, or that it should have been actually entertained and considered upon petition to rehear. A mere denial of the petition by the state court without opinion, is not enough. *Godchaux Co.* v. *Estopinal,* 251 U. S. 179, 181; *Bilby* v. *Stewart,* 246 U. S. 255; *Missouri Pacific Ry. Co.* v. *Taber,* 244 U. S. 200; *St. Louis & San Francisco R. R. Co.* v. *Shepherd,* 240 U. S. 240, 241; *Consolidated Turnpike Co.* v. *Norfolk, etc. Ry. Co.,* 228 U. S. 326, 334; *Forbes* v. *State Council of Virginia,* 216 U. S. 396, 399; *McCorquodale* v. *Texas,* 211 U. S. 432, 437; *Mutual Life Ins. Co.* v. *McGrew,* 188 U. S. 291, 308; *Mallett* v. *North Carolina,* 181 U. S. 589, 592; *Pim* v. *St. Louis,* 165 U. S. 273.

It was the purpose of the Act of 1922 to change the rule established by this formidable array of authorities as to the class of cases therein described. The question in such cases could not well be raised until the handing down of the opinion indicating that the objectionable judgment was to follow. This act was intended to secure to the defeated party the right to raise the question here if the state court denied the petition for rehearing without opinion.

We can not assume that Congress attempted to give to this Court appellate jurisdiction beyond the judicial power accorded to the United States by the Constitution. The mere reversal by a state court of its previous decision, as in this case before us, whatever its effect upon contracts, does not, as we have seen, violate any clause of the Federal Constitution. Plaintiff's claim, therefore, does not raise a substantial federal question. This has been

decided in so many cases that it becomes our duty to dismiss the writ of error for want of jurisdiction.

*Writ of Error Dismissed.*