**SAMBOR et al. v. PHILADELPHIA RAPID TRANSIT CO. et al.**

District Court, E. D. Pennsylvania. June 26, 1928.

No. 4175.

1. Courts ⬤⟹282(2)—Federal court has "jurisdiction" to determine cause based on claim of state law impairing obligation of contract (Const. art. 1, § 10, cl. 1; art. 3, § 2, cl. 1).

In view of Const. art. 1, § 10, cl. 1, inhibiting state from passing law impairing obligation of contract, and article 3, § 2, cl. 1, under which the judicial power of the United States extends to all cases arising under the Constitution, federal court has jurisdiction of, in the sense of judicial power to determine, a cause turning on the issue of a state law impairing the obligation of a contract.

2. Courts ⬤⟹366(1)—Federal courts, in applying national Constitution to contract to be construed under state Constitution and laws, must accept meaning given them by courts of state.

While the interpretation of the national Constitution and the application of it to the fact situation presented is for the courts of the United States, in dealing with its application to a fact situation made up of a contract, the law of which is the law of a state, and which is to be construed under the Constitution and laws of the state, the United States courts are bound

to accept the meaning of the state Constitution and statutes given to them by the courts of the state.

3. Courts ⬤⟹366(1)—Determination of which of conflicting provisions of state Constitution is dominant is for state court.

Where provisions of state Constitution are conflicting, it is for the state court to declare the true meaning of the Constitution in respect to which of these provisions is dominant and controlling.

4. Constitutional law ⬤⟹135—Pennsylvania. Public Service Act, empowering commission to establish charges for utilities, held not to impair obligation of contract of street railroad with city limiting fare.

Pennsylvania Public Service Company Act (Pa. St. 1920, §§ 18057–18214), establishing the Public Service Commission with power to establish schedule of charges for public utilities corporations, does not impair the obligation of contract of street railroad company with city limiting rate of fare, entered into under the provision of the state Constitution empowering municipalities to give or refuse such companies permission to occupy streets; there being impliedly incorporated in every such contract, as held by the courts of the state, in view of another provision of the Constitution reserving to the state the exercise, through the Legislature, of its police power, the provision that it is subject to the exercise of the police power of the state.

Suit for injunction by George Sambor and another, taxpayers, and others, against the Philadelphia Rapid Transit Company and others. Heard on motions for a preliminary injunction, for an ad interim restraining order, and to dismiss bill. Bill dismissed.

James J. Regan, Jr., of Philadelphia, for plaintiffs.

C. J. Joyce and Frederic L. Ballard (of Ballard, Spahr, Andrews & Ingersoll), both of Philadelphia, Pa., and Frank M. Hunter, Sp. Counsel, of Chester, Pa., for Public Service Commission.

Before DAVIS, Circuit Judge, and DICKINSON and KIRKPATRICK, District Judges.

DICKINSON, District Judge. The conclusions reached are that the motions for a restraining order and for a preliminary injunction should be denied, and the motion to dismiss the bill be granted. Although there are thus in form three motions before us, they all merge in the question of whether the order of the Pennsylvania Public Service Commission, approving an 8-cent tariff schedule rate of fare by the Philadelphia Rapid Transit Company operating a street railway system in the city of Philadelphia, is valid, in the face of a contract be-

tween the company and the city of Philadelphia that no more than a 5-cent fare should be charged. The entering into of this contract by the company was a condition of the grant to it of the franchise or privilege of operating its cars within the city.

The theory of a cause of action on which the bill is framed is based upon the following propositions:

(1) Under the Constitution and laws of the state of Pennsylvania, no street railway company can lawfully enter upon the streets of the city or operate its railway thereon without the consent of the city.

(2) The city thus having the absolute power to consent could condition it upon the entering into of a contract by the company not to exact for the service it rendered more than a prescribed rate of charge.

(3) An agreement made in the acceptance of this condition became a binding contract, the obligation of which cannot be escaped by the company, nor under the provisions of the Constitution of the state and of the United States can this obligation be impaired by any law of the state.

The defendants meet these propositions by an acceptance of 1 and 2 and a qualification of the third, and advance these supplemental propositions.

(4) When the instant contract was made, there was under the Constitution and laws of the state, written into every transaction and every contract, the provision that it was subject to such control and modification as the state, in the exercise of its police powers, might at any time impose. This provision thus became part of the contract, and had as much binding force as any other part of the contract.

(5) The state did, by an act of Assembly, known as the Public Service Company Act (Pa. St. 1920, §§ 18057–18214), in the exercise of its powers, establish a commission or tribunal, known as the Public Service Commission, with power to regulate the affairs of public utilities corporations, and to establish a tariff schedule of charges for services rendered to the public, from which the company is not permitted to depart.

(6) The change of rates here complained of was a change enforced by the orders of this commission in the exercise of its lawful powers and in conformity with the terms of the contract as both those laws and the contract have been interpreted by the courts of the state.

[1] The present bill is one filed in a court of the United States. This suggests and has provoked a discussion of the jurisdiction of this court. So far as this means jurisdiction in the sense of the possession of the judicial power to determine the cause, we see no need to go into the question, although it has been discussed at some length by counsel for plaintiff.

We think this discussion has been provoked by a misapprehension of the position taken by the defendants. The Constitution of the United States takes from the states the power to do what is here averred has been attempted.

No state shall pass any law impairing the obligation of contracts. Article 1, § 10, cl. 1. The clause thus concerns the Constitution of the United States. The "judicial power" of the courts of the United States extends to all "cases arising under" the Constitution. Article 3, § 2, cl. 1.

This court clearly possesses the needed judicial power, and has just as clearly had imposed upon it the duty to determine the cause. Inasmuch as the meaning of the Constitution must be found, it is again clear that the courts of the United States must find and declare that meaning and apply it to the fact situation presented. There is a much narrower sense in which the term "jurisdiction" is sometimes employed, whether in strict accuracy of expression or not. This cause concerns itself primarily with matters of local concern wholly. The contract is local, in the sense that it is limited in its operation to a single city and territory within a state. The laws which are the law of the contract are the laws of a state. The validity of those laws depend primarily upon the Constitution of the state. Indeed, the concern of the laws of the United States is confined to the single inquiry of whether there is here any impairment of the obligation of a contract within the meaning of the national Constitution. The very question here presented (aside from its purely national Constitution feature) has been before the courts of the state and ruled by them; contracts of the type of the contract before us have been before the state courts and construed to be subject to the exercise of the police power of the state, and the specific order of the commission which established the rate of fare here in controversy has been upheld by the state courts. The defendants in consequence urge that the United States courts are bound to accept the situation as thus defined and found by the courts of the state. The true doctrine we think to be this: [2] The courts of the United States must, as before stated, put their own interpretation upon the national Constitution, whatever its

meaning may be elsewhere thought to be, but, when they are dealing with its application to a fact situation made up of a contract, the law of which is the law of a state, and which is to be construed under the Constitution and statutes of that state, the United States courts are bound to accept the meaning of the state Constitution and statutes given to them by the courts of the state. Counsel for the plaintiff accepts this general doctrine, but contends that, when the rulings of the courts of the state are in conflict with themselves, the courts of the United States must be guided by their own judgment and in reaching it are not bound by the latest deliverance of the highest judicial court of the state, but may recur to an earlier ruling if found to be in accord with what the law should be declared to be. Such counsel for plaintiff avers to be the situation here presented. He relies with confidence upon one ruling of the Supreme Court of the state, and admits that opposing counsel may, with equal confidence, rest their defense upon another. The choice, as counsel for plaintiff views the case, is to be made between these two rulings.

The position of counsel for plaintiff is perhaps more accurately expressed by the statement that every contract is to be read in the light of the law of the place of the contract (as found by the courts of the state) which law thus becomes the law of the contract. The obligation of the contract is thereby fixed beyond the control of either of the parties, and, under the Constitution of the United States, beyond the power of the state by "any law" to in any wise impair. The meaning of the contract as thus determined and its obligation as thus fixed is unaffected by any subsequent ruling even of the highest judicial tribunal of the state declaring the law to be and to have been otherwise than what it was thus earlier found to be. It is in this sense that the courts of the United States feel at full liberty to follow an earlier in preference to a later ruling of the highest court of the state when there is conflict between them. For this proposition we have had cited to us, among others, the case of Tidal Oil Co. v. Flanagan, 263 U. S. 452, 44 S. Ct. 197, 68 L. Ed. 382.

Before citing the cases to which counsel above refers, a few general comments may be helpful. Every doctrine of the law must be expressed in words. The phrases employed are, however, not always to be taken literally in the sense they have in common speech. They are rather names or labels attached to doctrines of the law, which must,

if their real meaning is grasped, be known by what they are rather than by the mere names by which called. This is emphatically true of what are called constitutional principles. There is high poetic authority for the statement that "things are not what they seem." It is a further truth worthy of all acceptation that "words do not always mean what they say." One of the most widely known and oft-cited public documents employs words chosen by a master hand to express truths which were "self-evident," and yet when these phrases came before the courts for interpretation, it was found in a cause célèbre that the words were very far from "meaning what they said." Embalmed in every one of the familiar phrases of our Constitution is the genesis of the doctrine so known, and we cannot otherwise know what the doctrine really is than by knowing the history out of which it has come to us.

This very contract affords another illustration of the shifting value of words. The railway company had the right under the contract to something more substantial than words. The order of the commission and the contract each uses the same word "cent"; yet the word in the one has the real value of only 40 per cent. more or less of its value in the other. The verbal change was from 5 to 8, but the real change was from 5 to 3.2.

The present Constitution of Pennsylvania (with its amendments) is known as the New Constitution or the Constitution of 1874. Before it was adopted, all corporations were chartered by special acts of Assembly, which set forth the powers they were to exercise and the franchises and privileges they were to enjoy. In the case of what have since come to be called public utility corporations a tariff schedule was commonly included. These special acts of Assembly were held by the courts to be not legislative but contractual, the obligations of which as contracts, under the then Constitution of the state, could not be impaired by subsequent legislation. Under this system what were felt to be two evils arose. Monopoly was encouraged (particularly in transportation) because no rival or competing company could be chartered otherwise than through the favor of the Legislature. Special legislation often meant special privileges to favorites, and there was no relief in sight against what were likewise felt to be excessive rates of charge more especially by the railroads. These felt evils had much to do with the calling of a convention to frame a new Constitution. Special legislation was abolished, and all

charters were required to be granted under general laws, thereby assuring a "free railroad law" with favoring privileges to none; local control was given to municipalities by the provision that their streets could not be occupied by railway companies without municipal consent, and the police power was declared to be immune from curtailment or abridgement.

These provisions with the re-enactment of a contract clause similar in effect to that of the national Constitution make up the state law so far as pertinent to the instant case.

We have already said that the cause before us has been ruled in principle by the Supreme Court, the highest judicial tribunal of the state. This ruling was made in the Scranton Case hereinafter cited. The very transaction here complained of has received the sanction of the courts of the state, although it did not reach the Supreme Court, having ended in the Superior Court, an intermediate appellate court from which an appeal, if prosecuted, lies to the Supreme Court in cases raising constitutional questions and on allocatur. Philadelphia v. Commission, 83 Pa. Super. Ct. 8; Philadelphia v. Commission, 84 Pa. Super. Ct. 135. A like bill to this was dismissed by this court sitting as a District Court. Furey v. Philadelphia Traction Co. et al. (not reported).

It is an historical fact, although an incidental and accidental circumstance, that the cases which came before the courts, in which it was held that the charters granted by special acts of Assembly, were within the protection of the contract clauses of the state and national Constitutions, were all cases in which the change was being resisted by the corporations concerned, while since the passage of the public service company law there has been a complete, practical bouleversement, in that the cases which have been ruled, or most of them, are cases in which the corporations are benefited by the change.

The course of the argument has made it unnecessary to refer to any of the state rulings other than the two mentioned. They are Allegheny City v. Millville, E. & S. St. R. Co., 159 Pa. 411, 28 A. 202; Scranton v. Commission, 268 Pa. 192, 110 A. 775.

As before observed, counsel for plaintiff plants himself squarely upon the first, and places the defendants upon the second. We are unable to find any comfort for the plaintiff in the Millville, etc., R. Co. Case, nor do we find the conflict between the two rulings which counsel for plaintiff has so strongly emphasized. The first case was that of the consent of a municipality to the entrance upon its streets by a railway company conditioned upon the corporation agreeing to adopt a prescribed schedule of tariff charges. The corporation attempted to set up a right to operate its railway without making the required contract, on the theory that the municipality had given its consent but had futilely sought to impose a condition which was void because unreasonably onerous. The court held that the power of the municipality to grant or withhold its consent was absolute, which gave it the further power to condition the consent as it saw fit, and that there was no consent unless the conditions imposed were met.

The Scranton Case was a wholly different case, and has nothing in common with the Millville, etc., R. Co. Case. The Scranton Case was in principle the case before us. There the Public Service Commission had by its order (as here) imposed a tariff schedule which (also as here) called for a higher rate of fare than that prescribed in the contract between the city and the railway company. The order was supported as one made in pursuance of the exercise of the police powers of the state, and was attacked (again as here) on the ground that the act creating the commission was unconstitutional because in conflict with the contract clauses in the state and national Constitutions.

[3, 4] There is no impairment of the obligation of a contract when it is carried out in accordance with its terms and the contract there was read (as the present contract has been read by the state courts) as including among its terms that it was subject to the exercise of the police power of the state. There are two provisions of the Constitution of Pennsylvania, each of which in verbiage confers an absolute power. One grants to municipalities the power to consent or refuse to railway companies permission to occupy streets; the other reserves to the state the exercise, through the Legislature, of its police powers. If there is conflict between the two, some one must declare the true meaning of the Constitution in respect to which of these provisions is dominant and controlling. It must be that this meaning is to be declared by the courts, and, as the meaning to be found is that of a state Constitution, it must be found by the courts of the state. The courts of Pennsylvania have ruled that the meaning of the state Constitution is that every transaction and every contract, the law of which is the law of the state, has incorporated in

it that it is subject to the exercise of the police power of the state.

As the contract before us thus contains this provision, it follows that the enforcement of this provision of the contract is no impairment of its obligation, and that the quoted clause of the national Constitution has in further consequence no application, and the bill should be dismissed, with costs, for want of equity. It should perhaps be added that, independently of the conclusion reached that the bill shows no cause of action, we find no occasion for the issuance of a restraining order.

A formal decree in accordance with this opinion may be submitted.