Argued December 13, 1923.
The city and the intervening appellants are in such close accord in gathering from the evidence a rate-base sufficient to sustain the challenged rates, that but little need be said in recording our unanimous conclusion that this appeal should be dismissed.
The city complained that a proposed rate-increase was unreasonable and asked the commission to prescribe what the company might charge. The commission ordered the company to put into effect for a trial-period of six months, "a seven cent cash fare and a six and one-quarter cent rate of fare where coupon tickets in blocks of four are purchased ......," and to report the results monthly. The company complied, and before the period ended, filed a tariff adopting those rates. Complainant's attack on the rates originally proposed, was then transferred to the rates so newly established, and culminated in an order dismissing the complaint. From that order this appeal was taken. *Page 10 
At the outset, we note, that several elements frequently disputed in rate cases, are not questioned in this: appellants do not contend (1) that the service is inadequate, or the property inefficiently operated; or (2) that the fares charged are more than the service is reasonably worth; nor (3) is there any basis to contend that incompetent evidence materially affecting the issue was considered by the commission.
The appeal brings up only one contention, which is, that the rate charged is unreasonable in the sense that it yields a larger net return than appellants think should be earned on the fair value of the property devoted to the public service. But that is not an accurate test of an unreasonable rate at the complaint of a patron. "The company is entitled to receive a reasonable return for the services it furnishes, and no more; the public is entitled to receive an adequate return for the reasonable rates it pays and no more": Citizens' Pass. Ry. Co. v. P.S.C., 271 Pa. 39,56. "What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of the public highway than the services rendered by it are reasonably worth": Smyth v. Ames, 169 U.S. 466, 547. As to the company, rates are unreasonable, if they yield less than a fair return on the value of the property used and useful in the public service. In such cases, the value must be found as a base from which to determine whether the rates are reasonable or not. But the present appeal does not involve that inquiry. As has been stated, it is not contended that the service is inadequate, or the property inefficiently operated, or, what, in this case is of greater importance, that the fares charged are more than the service is reasonably worth.
If, however, we examine appellants' contention that the rates charged, yield a higher net return than is justified by the fair value of the property, the inquiry at once *Page 11 
is, — what is that value. The commission did not determine definitely what it is, because, during the investigation, it found respondent's property was worth more than the sum required to justify charging the disputed rate; it did, however, find that, for rate-making purposes, the value was "substantially upwards of $200,000,000"; the record contains evidence supporting that conclusion. At figures shown in the report, in 1922, the rates charged earned net, 7% on only $126,000,000; although all appellants concede that the value of the property was much greater; for 1923, the estimated net return was 7% on $158,000,000. At the oral argument, counsel for the city informed the court that the evidence justified a rate base of from $135,000,000 to $138,000,000; counsel for one intervening appellant in his brief, states it at $133,000,000, while another put it at $153,000,000. An expert who testified for the city, stated that the cumulative total investment alone, was in excess of $128,000,000, without including a surplus of over $11,000,000 invested in capital expenditures. Those concessions, frankly and commendably made, are not without convincing effect in an inquiry such as we must make, where the statute prescribes that the order of the commission is prima facie reasonable, and imposes on appellants the burden of establishing the contrary. Considering the public importance of the case, we shall not, — as we might, — rest our decision on those concessions alone; we mention them, however, to show there is no substantial difference between the parties to this appeal.
Let us restate the problem. The city asked the commission to fix a reasonable rate; it did so for a trial period; respondent adopted that rate finally; the investigation then proceeded on that rate and the commission held it reasonable; the statute makes the order prima facie valid. Now, what is urged to destroy that prima facie validity?
First, it is said the commission made no definite valuation. The law does not require one: Article V, section *Page 12 
20 (a), 1913 P.L. 1415; it may be made when necessary or desirable. If in the course of its inquiry, the commission finds, as it did in this case, that it has sufficient evidence to act finally, nothing can be gained by thereafter wasting time and money in unnecessary investigation: New Street Bridge Company's Case, 271 Pa. 19, 38.
Second, the report is condemned as vague and evasive. We are not impressed by that comment. The report contains thirty-five printed pages sufficiently stating the views of the commission for the purposes of the order made; we have no difficulty in determining that the order is supported by evidence; the concessions of counsel show the same thing.
Third, appellants contend the commission "gave undue weight to the evidence of present reproduction cost. It has confused the terms present fair value with present reproduction cost." A proper reading of the report shows that criticism is without foundation.
Fourth, objections are made to the force attributed to certain items of valuation; we consider them without merit on this appeal, and shall refer to only one, — to the expenditure of $14,000,000 for street paving prior to the agreement of 1907. Of this, the commission said: "The city, in its historical studies, determined, to its own satisfaction, that the actual cost of this paving so laid was in excess of $14,000,000. The company has claimed for the item of paving nearly $26,000,000...... In such cases we feel that all the company can claim to have protected is its original investment or price paid for the franchise, and we, therefore, can give no consideration to the higher figures which it is admitted the present cost of paving would reach." Appellants have no cause to complain of that; it is not unlawful to capitalize the amount paid for franchises: Article III, section 6 (a), 1913, P.L. 1391.
Fifth. The contract of 1907 between the city and the transit company provided "...... the present rates of fare may be changed from time to time, but only with the *Page 13 
consent of the parties hereto." The city's brief now objects that "The commission entirely ignored the city's claim of the binding effect of the agreement of 1907, notwithstanding the fact that a question under the contract clause of the constitution ...... was raised......"
We have not found where that point was raised below; on the contrary, the commission's power to make the change was expressly conceded by the city in the complaint by which this suit was begun. In its complaint the city averred: "On July 1, 1907, the company entered into a contract with your complainant, which provided inter alia that the transit company should make no change in the rates of fare which were then in force without the consent of the councils. Your complainant avers that while your honorable commission has power to order a change in said rates, irrespective of the consent of the council, the said transit company has no power of its own motion to make such change without the consent of the council prior to the determination and specific order of your honorable commission without violating its obligation under said contract [of 1907]......" We find nothing withdrawing that; nor is there anything in the commission's report indicating any question about its power; moreover, we think the position stated in the averment was right, — that the commission has the power pleaded. Without now determining that by the specific terms of its complaint and its suit before the commission the city in fact, within the meaning of the contract, consented to the change in fares ordered on its complaint and adopted by the company, we are clear that the principles governing Leiper v. R.R. Co., 262 Pa. 328; Scranton v. P.S.C.,268 Pa. 192, and White Haven Boro. v. P.S.C., 80 Pa. Super. 536, and similar familiar cases, apply in this case, and that the city has not been deprived of any right under the contract.
Appeal dismissed. *Page 14