## Philadelphia Rapid Transit Company Rate Case.

*Public Service Commission—Basis of valuation for fixing rates of public utilities—Res adjudicata.*

1. The Public Service Commission did not by its decision of June 21, 1923, make a valuation or a minimum valuation of the P. R. T. Company's property.

2. The commission is not required to make a valuation of the company's property, but may properly make such inquiry, if necessary, to determine whether the 8-cent fare proposed by the company is reasonable.

3. The commission is not conclusively bound by admissions of counsel for the City or other protestants as to the valuation, but should by its own investigation determine whether such admissions are justified by the facts; and if they are not justified by the facts, the commission should cause evidence to be introduced to counteract the force of such admissions.

4. If a valuation be made by the commission, testimony gathered by its experts and employees in connection with its own investigation may be introduced and considered along with all the other evidence in the case.

5. The fact that the Superior Court has not yet rendered its decision in the pending appeal from the commission's temporary order need not delay further action by the commission, as the disposition by the Superior Court of that appeal will not discharge the commission from the duty of determining whether or not the 8-cent fare shall be continued.

Department of Justice. Opinion to Hon. W. D. B. Ainey, Chairman, The Public Service Commission of the Commonwealth of Pennsylvania.

WOODRUFF, Att'y-Gen., Oct. 30, 1924.—Your letter of Oct. 27th, written on behalf of the Public Service Commission, is at hand. You ask to be advised regarding certain legal problems which the commission feel must be solved in connection with the Philadelphia Rapid Transit Company rate case. As you had very kindly informed us that we might anticipate the receipt of a letter containing your present inquiries substantially in the form in which they have been stated therein, we are prepared forthwith to give you our views on the questions presented. If there are any other questions which this opinion may suggest to the commission and upon which it may desire advice, we shall be glad to have you state them at your convenience.

A discussion of your questions is impossible without a clear understanding of the history of P. R. T. Company rate litigation to date. We shall, therefore, as a preliminary, state the history of that litigation.

### History of P. R. T. Company rate litigation.

The first P. R. T. Company rate case to be brought before your commission followed the filing on June 1, 1920, of a P. R. T. Company tariff, in which that company proposed to abolish free transfers at all points in Philadelphia and substitute 3-cent exchange tickets in lieu thereof, retaining 5 cents as the basic fare. Prior to June 1, 1920, trolley fares in Philadelphia were fixed by the agreement of July 1, 1907, between the City of Philadelphia and the P. R. T. Company. Under that agreement, the fare was to remain at 5 cents, with free transfers and 3-cent exchange tickets at certain points, unless and until the Councils of the City of Philadelphia should consent to a change in rates. As the Public Service Company Law was not enacted until 1913, the agreement of 1907 had not been approved by your commission. Following the filing of the tariff of June 1, 1920, the City of Philadelphia filed a protest against the establishment of the rates proposed therein; and, at the suggestion of your commission, the company first suspended and later abandoned this tariff. It then made application to the Councils of the City of Philadelphia for the consent of the City to a change in the rates of fare stipulated in the 1907 agreement. This consent was refused, and on Oct. 4, 1920, the company filed with your commission a petition requesting permission to put

into effect a new tariff, eliminating entirely free transfers and 3-cent exchange tickets and charging a straight 5-cent fare. This petition your commission refused on the ground that the proposed rates would be unreasonable and unjustly discriminatory. It found, however, that the company needed a greater revenue, and on Oct. 18, 1920, entered an order directing the company to file a tariff providing for a 7-cent cash fare, four tickets for a quarter, the transfer and exchange privileges to remain as theretofore. The commission also ordered the P. R. T. Company to file an inventory of its property to enable the commission to place a valuation on the company's used and useful property for rate-making purposes.

The order of Oct. 18, 1920, was a temporary order, effective for six months from Nov. 1, 1920, at the expiration of which period the company filed a tariff continuing the rates prescribed in the commission's temporary order, thus adopting and establishing those rates.

The protest of the City of Philadelphia against the rates contained in the P. R. T. Company's tariff of June 1, 1920, was not abandoned, but was transferred to the rates established by order of your commission and later adopted by the company. Throughout the proceedings certain associations of Philadelphia business men appeared as intervening complainants.

Many hearings were held and much evidence was taken following the commission's order of Oct. 18, 1920, but the commission did not reach a decision in the matter until June 21, 1923, when it adopted a report and made an order dismissing the complaints of the City of Philadelphia and the intervening complainants.

Much of the testimony taken in the case decided June 21, 1923, was testimony relating to the value of the P. R. T. Company's property. However, in rendering its report on the case, the commission said: "After giving due consideration to the whole record, we do not find it necessary in this case, for reasons already given, to fix with any degree of mathematical accuracy the present fair value of this property, for it is evident that any such figure we might find under the evidence would amply justify the return which the present rates of fare are producing, and as it is those rates, and no other, which we are to pass upon, we do not have to consider conditions which might arise were the company seeking an increase in revenue."

Again: "We do not find it necessary in this proceeding to arrive at a final determination of the present fair value of the property of the company. However, our consideration of the items of evidence before us, including the questions of depreciation and going-concern value, of matters in dispute between the company and the City, lead us to the conclusion that, under established legal principles, the present fair value of the company's property is substantially upwards of $200,000,000."

An appeal was taken by the City of Philadelphia and the intervening complainants to the Superior Court. The appeal was argued Dec. 13, 1923, and the opinion of the Superior Court dismissing it was filed Feb. 29, 1924. In rendering the opinion of the court, Judge Linn said, at 83 Pa. Superior Ct. 10: "If, however, we examine appellants' contention that the rates charged yield a higher net return than is justified by the fair value of the property, the inquiry at once is, what is that value? The commission did not determine definitely what it is, because, during the investigation, it found respondent's property was worth more than the sum required to justify charging the disputed rate; it did, however, find that, for rate-making purposes, the value was substantially upwards of $200,000,000; the record contains evidence supporting that conclusion."

There is one other fact in connection with the commission's action of June 21, 1923, which must be noted, namely, that substantial admissions with respect to the value of the P. R. T. Company property were made, both by counsel for the City and by counsel for the intervening complainants. In its report the commission stated: "After conducting a check of this estimate of the company (an estimate fixing the value of the property at $252,000,000), the City admitted the substantial accuracy of a great majority in number of the accounts, and, substituting its revised figures in disputed matters, reached a total reproduction cost, undepreciated but exclusive of going-concern value, of more than $187,000,000."

With respect to the admissions made by the protestants, the Superior Court, in its opinion, said: "At figures shown in the report of 1922, the rates charged earned net 7 per cent. on only $126,000,000, although all appellants concede that the value of the property was much greater; for 1923, the estimated net return was 7 per cent. on $158,000,000. At the oral argument, counsel for the City informed the court that the evidence justified a rate-base of from $135,000,000 to $138,000,000; counsel for one intervening appellant in his brief states it at $133,000,000, while another put it at $153,000,000. An expert, who testified for the City, stated that the cumulative total investment alone was in excess of $128,000,000, without including a surplus of over $11,000,000 invested in capital expenditures. Those concessions, frankly and commendably made, are not without convincing effect in an inquiry such as we must make, where the statute prescribes that the order of the commission is *prima facie* reasonable, and imposes on appellants the burden of establishing the contrary. Considering the public importance of the case, we shall not—as we might—rest our decision on those concessions alone; we mention them, however, to show that there is not substantial difference between the parties to this appeal."

The figures used as a basis for the testimony in the case decided June 21, 1923, were as of June 30, 1919; and the record discloses the fact that the commission did not receive in evidence the results of any investigation made by it or at its direction, but arrived at its determination exclusively upon evidence offered by protestants on the one hand and the respondent, P. R. T. Company, on the other, apparently giving substantial effect to certain admissions made by the protestants.

Article II, section 1 (f), of the Public Service Company Law of July 26, 1913, P. L. 1374, 1379, provides that after the determination of a rate by the commission it shall be unlawful for any public service company to change the same within a period of three years "without application to, and the approval of, the commission, of which application thirty days' prior notice shall be given . . . to the public." Desiring to establish an increased fare in less than three years after June 21, 1923, the company found it necessary to seek the approval of the commission therefor; and on July 21, 1924, the company filed a new tariff providing for the establishment of a basic 8-cent cash fare, two tokens for 15 cents, with substitution of free transfers at certain points in place of 3-cent exchange tickets, and the establishment on certain suburban lines of new fare zones. Concurrently with the filing of this tariff, a petition for the approval thereof was filed with the commission at application docket No. 11,417—1924. A protest against the new fare was filed by the City of Philadelphia on Aug. 5, 1924, and on Sept. 2, 1924, hearings on the petition and protest began. Additional protestants appeared at the hearings.

Counsel for the P. R. T. Company, at the opening of its case, offered in evidence "the entire record in the valuation case, known on the commission's

records as Complaint Docket No. 3504"—the 7-cent fare case. This evidence was followed by the presentation of oral testimony on behalf of the P. R. T. Company. The P. R. T. Company's witnesses were cross-examined at length by counsel for the protestants, and a very limited amount of testimony was adduced in support of the protests. There was no testimony offered as the result of any investigation by your commission.

On Sept. 8, 1924, your commission filed a report and made an order authorizing the company to put the new tariffs into effect on five days' notice to the public. This order was, however, declared to be a temporary order pending the final determination by the commission whether such new rates could be made permanently effective.

From the temporary order of the commission, the City of Philadelphia and other protestants appealed to the Superior Court, which has not yet rendered its decision.

We understand that, subsequent to the order of Sept. 8, 1924, the commission engaged the services of an expert in municipal transit matters, and that the questions stated in your letter calling for this opinion arise because of uncertainty as to the scope of the investigation which the commission should make through the expert so employed or otherwise, and the scope of the future hearings to be held to determine whether the 8-cent fare can become permanently effective.

### Questions stated.

The commission asks to be advised with respect to the following questions:

"1. Whether the commission is bound by the valuation in the Philadelphia Rapid Transit case by its decision of June 21, 1923?

"2. Whether the commission is not required by the law and the decision of the courts to reopen and consider anew from the beginning the whole question of the Philadelphia Rapid Transit valuation?

"3. As to whether the commission is in any sense bound by the admissions of counsel for the City of Philadelphia or other complainants as to the valuation of the Philadelphia Rapid Transit, or whether it is not, on the contrary, required, while giving due weight to all evidence submitted, to reach its own conclusions upon the basis of its own investigations?"

You also suggest that it would be helpful to the commission to have us give you our suggestions with regard to the procedure to be followed in the event that we advise that the commission may inquire into the value of the P. R. T. property in the pending case, with particular reference to the question whether it would be proper for the commission to proceed with the case pending the decision of the Superior Court on the validity of the commission's temporary order.

We shall consider your several questions in the order in which they have been stated.

### First question.

"Whether the commission is bound by the valuation in the Philadelphia Rapid Transit case by its decision of June 21, 1923?"

This question immediately suggests the inquiry: Has the commission at any previous date made a "valuation" of the used and useful property of the P. R. T. Company? It is quite clear that the commission has not made a complete valuation of this property, as it distinctly stated in its report of June 21, 1923, that it was not undertaking to reach a "final determination" of the present fair value of the company's property. The argument may, however, be made that, while the commission did not purport to make a complete valu-

ation, its conclusion that the "present fair value of the company's property is substantially upwards of $200,000,000" was what might be called a "minimum valuation." This leads us to inquire into the essential requisites of a "valuation" for rate-making purposes.

The elements to be taken into consideration in evaluating the property of a public service company are clearly stated in article v, section 20 (a), of the Public Service Company Law of July 26, 1913, P. L. 1374, 1416, but the statute does not prescribe the extent to which the public and the public service company are entitled to know the values which the commission has placed upon various items or classifications of property evaluated. The Supreme Court of Pennsylvania has, however, very clearly defined the law applicable to this very important subject. After the commission had made its order in the P. R. T. Company 7-cent fare case, and after the appeal thereon had been argued in the Superior Court, the Supreme Court on Jan. 7, 1924, rendered its decision in Erie City et al. v. Public Service Commission, 278 Pa. 512. In that case the commission had fixed a value of $14,380,000 on the property of the Pennsylvania Gas Company attributable to Pennsylvania. It found the value of "gas holdings" to be $5,500,000, leaving the balance, or $8,880,000, as the fair value for all other classifications of rate-base without specifying how this lump sum figure was determined.

In .reversing the decision of the Superior Court, which sustained the commission's valuation, the Supreme Court, speaking through Mr. Justice Kephart, said, at page 533: "Lump sum or partial lump sum values are unfair both to the public and the utility where they represent the composite of a number of items entering into it. The commission's findings need not set forth the value of each separate piece of property, but there are standard classifications entering into the rate-base recognized in the many decisions of the Supreme Court of the United States, particularly noted in the dissent in the Southwestern Bell case. With the engineering force and assistants at hand, we see no reason, when facts are presented and determined, why they should not appear under the different classifications at least with sufficient clarity that the courts may know the parties vitally interested have not been unfairly dealt with."

By reference to the commission's report of June 21, 1923, in the P. R. T. rate case, it appears that it would be impossible to ascertain therefrom how the commission arrived at the figure $200,000,000, used in its expression "substantially upwards of $200,000,000." The closest approximation to an explanation of this figure would seem to be contained in the statements made in the report that the City had admitted that the "reproduction cost" of the company's property, undepreciated, but exclusive of going-concern value, was more than $187,000,000; that the company claimed a valuation of $252,000,000; that the difference between the City's admission and the company's claim was approximately $65,000,000, a difference arising "not because of any substantial difference as to quantity or unit prices, but because of a difference in position as to the right to include certain items and the basis of estimating others;" and that upon consideration of the disputed items it was apparent that "the City's admitted figure of reproduction cost of $187,000,000 must be very materially increased, certainly to a point substantially upwards of $200,000,000. Except, possibly, with respect to one of the disputed items, it is impossible to ascertain from the report what figures were allowed by the commission for these items; and nowhere in the report does it appear how the figure of $187,000,000, stated to have been admitted as "reproduction cost," was made up.

The commission did not fix a value for accrued depreciation, nor did it fix an amount for going-concern value. It merely found that the latter substantially offset the former. These omissions violated the very specific requirement established by the Supreme Court in the Erie City case that the rate to be applied for accrued depreciation must be found, and that the report in each instance must show plainly how much is allowed for going-concern value, or if no such allowance be made, the reasons for disallowance.

Even if in cases where definite valuations have been made, the proper procedure might be to make appropriate additions to, or subtractions from, the various items entering into such valuations to bring them down to date, it would be impossible to follow that procedure in the present case, because the only finding of the commission in its 1923 determination of the rate controversy was a lump sum of "upwards of $200,000,000," without specifying any of the constituent items entering into that figure. Had this finding been intended to be a "valuation" or even a "minimum valuation," it would clearly have been necessary for the courts to send the case back to the commission with instructions to proceed in the manner specified in the Erie City case. The conclusion is inescapable that the Superior Court sustained the action of the commission only because the $200,000,000 figure was not intended to be, in whole or in part, a "valuation."

The present case demonstrates most clearly not only the wisdom, but also the necessity of the requirement so clearly stated by the Supreme Court in the Erie City case, that in order to be sustained a valuation must set forth the values placed upon the different classifications of property and not merely a lump sum or a partial lump sum. Had the commission evaluated the P. R. T. Company's property in 1923 by classified items, it might now be possible to ascertain the present value of the property by additions to, or subtractions from, these items; and the process of reaching a determination in the instant case might be relatively simple. However, even were it to be conceded that the $200,000,000 figure was a "valuation," there is no possible method by which that figure could be corrected to date, as the items which entered into it are unknown. Instead of being able to use *items of value* as a working base, the commission will be obliged to use *items of evidence* if it makes any use whatever of the former testimony. For this purpose all items of evidence stand on the same footing, none of them having been specifically adopted by the commission in its former report.

From what has been said, it is clear that the commission has not made a "valuation" or a "minimum valuation" which could be sustained as a basis from which to bring down to date the value of the P. R. T. Company's property; and as the commission has never made a "valuation" of the P. R. T. Company's property, it necessarily follows that, upon the present inquiry, there is no past valuation which can be binding upon it.

### Second question.

"Whether the commission is not required by the law and the decisions of the courts to reopen and consider anew from the beginning the whole question of the Philadelphia Rapid Transit valuation?"

We have already pointed out that there is not at this time any past valuation of the P. R. T. Company's property which could be regarded as binding upon the commission.

At page 521 of the Supreme Court's decision in the Erie City case, which we have already cited, Mr. Justice Kephart said: "Generally speaking, the value of private property used in public service and affected with a public

interest is to be determined at the time of the inquiry or investigation regarding rates."

Article v, section 21 (a), of the Public Service Company Law provides that the commission shall make a valuation "whenever it (the commission) shall deem such valuation or determination necessary or proper under any of the provisions of this act." This provision was construed by the Superior Court in its opinion in Philadelphia v. Public Service Commission (the 7-cent fare case), 83 Pa. Superior Ct. 8, at page 11, to mean that the question whether a valuation is necessary in connection with a rate case must be determined by the commission; a valuation is not obligatory.

Plainly, if the commission finds a valuation to be necessary or proper to a determination of a rate question, it is its duty to make one; and if a valuation be made, it must be made as of the date of the inquiry into rates.

How, then, is the commission to determine whether, in any particular rate case, a valuation is necessary and proper? To this question our answer is, that if the actual or estimated net revenue from a proposed rate be less than the allowable per cent. return upon an amount substantially less than the value of the public service company's property, this being admitted by all of the parties to the inquiry and clearly disclosed by any investigation made by the commission, a valuation would not be necessary or proper. If, however, any of the parties to the inquiry, or the commission itself, as the result of its own investigation, be unwilling to concede that the net revenue from the proposed rate would not exceed the allowable per cent. return upon an amount substantially less than the value of the company's property, we cannot conceive that a determination of the rate controversy without a valuation could be sustained should there be an appeal to the courts from the commission's determination. If, as Mr. Justice Kephart said in the Erie City case, the basis of the commission's determination must be stated "at least with sufficient clarity that the courts may know that the parties vitally interested have not been unfairly dealt with," a valuation itemized by classifications would seem to be indispensable.

It may be argued that, under the Public Service Company Law, there is an implied three-year period of repose preventing the reopening of a valuation determination within that period. If such a three-year period of repose exist, it must be implied from the fact that article II, section 1 (f), of the Public Service Company Law imposes upon public service companies a three-year period of repose for rates, during which period rates determined by the commission cannot be increased by the interested public service company without the express approval of the commission. However, whether there be a three-year period of repose for valuation determinations, is a doubtful question, upon which an opinion is unnecessary at this time for the following reasons:

The suggestion that a three-year period of repose prevents the reopening of the valuation of the P. R. T. Company's property presupposes that a "valuation" has been made. This we have already shown is not the fact. Equally conclusive is the plain proposition that if, within the three-year period of repose for rates, a public service company makes application for the approval of higher rates, it thereby surrenders the benefit of any possible three-year period of repose for valuation matters.

In this connection, attention must be called to the fact that article v, section 21 (b) of the Public Service Company Law definitely and without any qualification as to time gives to your commission the power "to make revaluations of the property of any public service company from time to time," so

that even if a valuation of the P. R. T. Company property had been made, a revaluation would be possible under the clear provisions of the Public Service Company Law.

The P. R. T. Company, in offering in evidence in the pending case not only the report of your commission in the 7-cent fare case, but also the testimony upon which that report was based, evidently entertained the view that the evidence taken in the 7-cent fare case is relevant in the pending proceedings; and, of course, if this evidence is relevant, it may, like all other evidence adduced by the company, be contradicted by evidence offered by the protestants or introduced on behalf of the commission by any experts or employees who have investigated the question of the value of the property at the instance of the commission.

Accordingly, you are advised that the commission may unquestionably inquire into the present value of the P. R. T. Company property, if such an inquiry shall appear to be necessary and proper to a determination of the question whether the 8-cent fare proposed by the P. R. T. Company can become permanently effective, but that a valuation is not obligatory unless the commission shall find that it is necessary and proper.

### Third question.

"As to whether the commission is in any sense bound by the admissions of counsel for the City of Philadelphia or other complainants as to the valuation of the Philadelphia Rapid Transit Company, or whether it is not, on the contrary, required, while giving due weight to all evidence submitted, to reach its own conclusion upon the basis of its own investigations?"

Article v, section 23, of the Public Service Company Law confers upon the commission the fullest powers of investigation. These powers may be exercised, inter alia, in determining the reasonableness of any rates, fares or charges of a public service company, or "in carrying out any of the provisions of this act." The commission is authorized "to enter upon the premises, buildings, machinery, system, plant and equipment and make any inspection, valuation, physical examination, inquiry or investigation of any and all plant and equipment, facilities, property and pertinent books, papers, memoranda, documents or effects whatsoever of any public service company."

In view of these broad provisions, the commission's power to make any appropriate investigation through its own experts or employees cannot be questioned. The commission may, of course, introduce into the record any evidence gathered in connection with its own investigation of the subject-matter of the controversy.

It would, however, not be lawful for the commission to base its determination of the value of a public service company's property exclusively upon the testimony of its own investigators. The commission must also weigh carefully any testimony which may be introduced by any of the parties to the inquiry, and its determination must be reached upon a consideration of all of the evidence before it.

A rate investigation, such as that now before the commission in the P. R. T. case, is not an ordinary lawsuit between the public service company, on the one hand, and certain adverse parties, on the other. There is a public interest which should be protected in any inquiry of this character. The commission's determination should not, therefore, be founded upon admissions made by counsel for any of the parties unless the commission, as the result of its own investigation, is satisfied that the admissions conform to the facts. Should the commission find that any such admissions are unwarranted, it could, and

we believe should, cause evidence to be introduced to counteract the force of such admissions.

You are accordingly advised that the commission has the power to investigate, through its own experts or employees, any matter arising in connection with the pending rate case, to cause to be introduced in evidence any facts ascertained through such investigation, and to consider evidence so introduced along with all the other evidence in the case in reaching its determination. In a case of the public importance of the rate case in question, admissions, particularly if made against the public, should be accepted as final only if, upon investigation by the commission, they appear to be in accord with the facts. The rights of the public should not be allowed to be impaired by admissions made by any particualr litigant or group of litigants.

### Procedure.

You have asked our advice with regard to the procedure to be followed by your commission in inquiring into the present value of the P. R. T. Company property, should such an inquiry be deemed necessary and proper. The answer to this question seems to us to be very simple. As evidence of the value of the P. R. T. Company's property, its counsel have introduced into the record in the pending case the entire record in the 7-cent rate case. That evidence may, or may not, be supplemented by other evidence adduced by the P. R. T. Company to bring the value of the property down to date. The protestants and intervening protestants may introduce evidence to contradict the testimony for the company. Whether such evidence be introduced or not, your commission can unquestionably cause to be introduced any evidence relating to the value of the property which may be at the commission's command.

You have before you a rate case. The value of the property of the P. R. T. Company used and useful in the public service is one of the facts which must enter into your determination of the question whether the proposed rate is reasonable. Value is a fact, and, like all other facts entering into your determination, must be proved by evidence. We can see no difficult procedural question of any character in connection with this matter.

We realize that on opening the pending case the chairman of the commission announced that the commission would not cover the same ground which was covered in the last P. R. T. rate case, so far as the question of valuation was concerned. For reasons already discussed, we believe that this statement was premature. We feel that fairness to all parties concerned would dictate its modification at the earliest possible opportunity after the commission shall have determined whether a valuation is necessary and proper.

You have also inquired whether it is our view that, out of deference to the Superior Court, you should postpone further hearings in the pending case until the opinion of the Superior Court, on the appeal from your temporary order, shall have been rendered and the record which is now before the court returned to the commission.

The commission has not in any wise indicated what its final determination will be with respect to the reasonableness of the 8-cent fare. It has made only a temporary order. The pending appeal challenges only the temporary order. Whether the temporary order be sustained or reversed, the commission will not be discharged from the duty of proceeding with the case to a final determination. We cannot, therefore, believe that the commission could possibly be criticised as discourteous to the Superior Court for proceeding with the case at the earliest possible moment.

*Summary.*

To summarize, we advise your commission:

1. That the commission may legally make such investigation as will enable it to determine whether a valuation of the P. R. T. Company property is necessary and proper in connection with the pending 8-cent fare case;

2. That should a valuation appear to be necessary and proper at this time, there is no legal obstacle which would prevent the commission from making it, because there has never been a valuation of this property along the lines specified by the Supreme Court of this State;

3. That a valuation will be necessary and proper and should be made, unless the commission be satisfied and all parties to the case agree that the return produced by the 8-cent fare will not exceed the lawful percentage upon a value substantially less than the present fair value of the P. R. T. Company property;

4. That if a valuation be made, the commission may cause to be introduced in evidence any testimony gathered by its experts and employees in connection with the commission's own investigation of the value of the property;

5. That there are no difficulties in procedure which must be overcome to enable the commission to make a valuation;

6. That the fact that the Superior Court has not yet rendered its decision in the pending appeal from the commission's temporary order need not delay further action by the commission. The disposition by the Superior Court of that appeal will not discharge the commission from the duty of determining whether or not the 8-cent fare should be continued. Failure to await the Superior Court's decision could not possibly be deemed a breach of that courtesy which we all desire to extend to the court.

From C. P. Addams, Harrisburg, Pa.